# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY N. PUTARO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  2:07-cv-817 |
| | ) |
| CARLYNTON SCHOOL DISTRICT, | ) |
| MICHAEL PANZA, individually and as | ) |
| Superintendent of the Carlynton School | ) |
| District, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (*Document No. 22*). Defendants have filed a Concise Statement of Material Facts[1] and supporting brief. Plaintiff has responded to the statement of facts and filed a brief in opposition and an affidavit *(Document Nos. 28, 29, 30)*. Defendants have filed a reply brief and the motion is ripe for disposition.

### Factual and Procedural Background

Defendant Michael Panza ("Panza") is the Superintendent of Defendant Carlynton School District ("Carlynton"). Between August 2003 and June 2006, Plaintiff Anthony N. Putaro ("Putaro") was a substitute teacher at Carlynton. In June 2006, Putaro was not offered a position as a permanent teacher. The only claim which remains in this case is Plaintiff's allegation that

---

[1]As Plaintiff correctly asserts, Defendants have not cited to specific averments in the record, but merely refer generally to "tabs" which contain numerous pages. This has made the Court's review of the record much more difficult and does not comply with L.R. 56.1.

Defendants failed to hire him as a permanent teacher in retaliation for having been a party to a grievance filed under the collective bargaining agreement, an activity which is protected by the First Amendment of the Constitution of the United States.

The Carlynton Federation of Teachers ("CFT") ("union") filed a grievance on behalf of a number of teachers including Putaro's name on May 17, 2006. The grievance involved whether Putaro should have been compensated as a permanent or long-term substitute teacher ("sub") under the Collective Bargaining Agreement at a higher rate than the rate paid to a day-to-day sub. Plaintiff submitted an affidavit from John Torchia, the union president at the time, which states that Panza was extremely disturbed by the grievance and threatened to withhold retirement benefits from a 403(b) Plan unless the grievance was withdrawn.[2] On June 6, 2006, Panza denied the grievance. On June 7, 2006, the Union appealed the denial to the School Board which scheduled a hearing on June 29, 2006.

At the time, Carlynton had four elementary teaching positions to be filled for the 2006-2007 school year – two full-time permanent teaching positions and two long-term substitute positions. There were over 700 applicants for the positions. Putaro was one of 80 of the applicants invited to a first-round interview and one of 27 invited to a second-round interview. He then qualified as one of ten finalists for a third interview which included a mock lesson. The Administration made recommendations for the hiring of new teachers to the School Board on June 29, 2006, at the same meeting at which Putaro's grievance was to be considered.

The second-round interview session was with Panza and principals Regina Urso and

---

[2]Torchia's affidavit also relates a conversation with Panza earlier in the 2005-2006 school year, in which Torchia suggested that Putaro be hired full-time and Panza responded that he had heard great things about Putaro and he would likely be the next person hired.

2

Jacie Bejster (now Maslyk) on June 12, 2006. There are factual disputes as to what happened next. According to Putaro, on June 13, 2006, Regina Urso, the principal of the school at which Putaro taught, called him with urgent news. Putero rushed to the school to meet with Urso in person. Urso expressed concern about Putero's job prospects based on a conversation she had with Panza regarding the adverse impact of the grievance being presented to the School Board on the same day as the hiring decision. Urso explained that the grievance had created significant problems and suggested that Putaro meet with Panza. Putaro went immediately to Panza's office. According to Putaro, Panza basically stated: "What am I supposed to do here? How can I justify putting your name - submitting your name for hire the same night that your name appears on a grievance?" Putaro Dep. 151-152. In response, Putaro attempted to convince Panza that he was not going to jeopardize a potential full-time teaching job over a grievance and offered to write an explanatory letter. Panza responded that such a letter might help. Putaro, in fact, delivered a letter to Panza that very day in which he disavowed his involvement with filing the grievance and conveyed his hope that "this situation will in no way affect my opportunity of becoming a permanent teacher. . . ." Plaintiff's Appendix 22.

Urso and Panza both admit having met with Putaro on June 13, 2006 and that Putaro was distraught about the grievance. Urso Dep. at 30; Panza Dep. at 62. Urso testified that she urged Putaro to talk to Panza. She also testified that Panza was upset that the grievance had been filed by the union. Urso Dep. at 33. Panza testified that Putaro had the letter in his hand when he showed up for the unscheduled meeting and that he assured Putaro that the grievance would not harm his chances for employment. Panza Dep. at 64.

The final interviews took place on June 19 and 21, 2006. After the interviews were

3

completed, the interviewers (Panza, Urso, Maslyk and board member Patricia Schirripa) met to determine their final recommendations to the School Board. Schirripa was aware that a grievance had been filed on behalf of Putaro and others. Schirripa Dep. at 16. The final decision-making process is well documented.

Each interviewer scored each candidate on a 75-point scale. Urso rated Putaro at 70 points, which tied for the highest score of all finalists. Urso ranked Erin Nelson, the candidate who ultimately obtained the position, the third-lowest. Maslyk ranked Putaro fourth at 62 points. Maslyk was "not a fan" of Nelson and scored her substantially lower, at 52 points. Maslyk Dep. at 25. Schirripa awarded Putaro 60 points, fourth lowest among the finalists. Panza scored Putaro significantly lower in comparison to the other interviewers. Originally, Panza graded Putaro at 46 (lowest of all finalists) but subsequently revised his score to 51 (8th place).

After totalling the scores, Putaro ranked fourth with 243 points (despite Panza's low score) and Nelson was sixth with 239 points. The group readily agreed on candidates for the first three open positions. The fourth job opening, which was in Urso's building, was deemed a close call.[3] Urso left the meeting early because she was having surgery the next day. When she left, Putaro was in fourth place and she assumed that he would be hired for the fourth job opening. Urso Dep. at 34. Urso had been strongly advocating that Putaro be hired because he had been a substitute in her building for an entire year and done a good job. Maslyk Dep. at 29-30.

During the discussion, Panza recorded the place ranking of the candidates (1st, 2nd, 3rd, etc.) by each interviewer. This alternative methodology had not been discussed beforehand.

---

[3] The candidate who received the third job opening, apparently without much discussion, received 245 points. Defendants Appendix 2.

Maslyk Dep. at 30-31.  Plaintiff contends that this place ranking did not occur until after Urso left the room.  Principals Urso and Maslyk ranked Putaro first and fourth, respectively, while Panza and Schirripa both ranked him eighth.  Under this methodology, Nelson ranked fourth and Putaro was fifth.

Nelson was a graduate of Carlynton and had been a full-time elementary teacher in Prince George County School District for two years.  Putaro was a graduate of Baldwin-Whitehall School District.  He had never held a contract position as a full-time teacher, although his role as a permanent substitute required him to perform all of the duties of a full-time teacher, including lesson plans and grading, with periodic observations and evaluations.  Putaro had served as a permanent substitute in Urso's building on multiple occasions and she had no negative comments about his performance.  Urso Dep. at 16.  The parties dispute whether hiring preferences were historically afforded to candidates who had graduated from Carlynton, had held a full-time teaching position, or had been long-term substitues in the district.  This was Panza's first year at Carlynton.

Nelson was hired for the last open position.  The parties dispute whether Putaro was contacted to serve as a day-to-day substitute for the 2006-2007 school year.

## Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot

rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. Rather, the non-moving party must set forth facts sufficient to establish the essential elements of that party's case. *Celotex,* 477 U.S. at 322. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

## Discussion

Section 1983, 42 U.S.C. § 1983, provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not the source of substantive rights. *Maher v. Gagne*, 448 U.S. 122, 129, n. 11 (1980). Instead, it provides a remedy for those able to establish an underlying violation of federal law. *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992)("Although the statute provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law[.]").

In this case, Putaro alleges that Defendants retaliated against him for engaging in activity protected by the First Amendment. The elements of a First Amendment retaliation claim by a

public employee are well-recognized. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (citations omitted):

> We follow a well-established three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment. First, the employee must show that the activity is in fact protected. Second, the employee must show that the protected activity "was a substantial factor in the alleged retaliatory action." Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct.

The Court's analysis must start with the factual disputes regarding the meeting between Putaro and Panza on June 13, 2006. At the summary judgment stage, the Court must of course draw all reasonable inferences in favor of Plaintiff, the non-moving party. A reasonable jury could believe the version of the meeting set forth by Putaro rather than Panza. *See Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987). Panza and Urso both confirmed that such a meeting occurred and there is a contemporaneous letter which substantiates the concerns that Putaro described in his deposition. Thus, for the purpose of deciding this motion, the Court must assume that Panza stated, in essence, that he could not recommend to the School Board that Putaro be hired at the same meeting in which Putaro's name appeared on a union grievance.

The Court turns now to the elements of Plaintiff's claim. The first prong of the First Amendment retaliation claim is easily satisfied. As recently explained in *Porter v. Intermediate Unit*, 2007 WL 2597911 (W.D. Pa. 2007) (emphasis added):

> It is well settled law in the Third Circuit that petitioning the government in the form of a lawsuit or the filing of a grievance pursuant to a collective bargaining agreement is protected activity under the petition clause of the First Amendment to the United States Constitution. *San Filippo v. Bongiovani*, 30 F.3d 424, 434-443 (3d Cir.1994). A plaintiff need only show that his or her lawsuit or grievance is not a sham or frivolous to make out a prima facie claim for retaliation under the petition clause. *Id*. Additionally, and substantially different from the

> requirements for the protection under the speech clause of the First Amendment, the plaintiff's **petition need not address matters of public concern** to be worthy of protection. *Hill v. Borough of Kutztown*, 455 F.3d 225, 242, n. 24 (3d Cir.2006) (*citing San Filippo*, 30 F.3d at 434-443; *Brennan v. Norton*, 350 F.3d 399, 417 (3d Cir.2003)).

There is no dispute that a grievance was filed pursuant to a collective bargaining agreement. Although the grievance was presented by the union, it was in the name of Putaro and others. The grievance was neither a sham nor frivolous and it was presented before the adverse hiring decision was made. Both Panza and Schirripa were aware of the grievance prior to the hiring decision.

The second prong is also satisfied. A reasonable jury could conclude that the protected activity (i.e., the grievance) was a substantial factor in the alleged retaliatory action. Indeed, Panza's comment, if credited by the jury, provides a direct causal link between the grievance and the failure to hire Putaro. There was an unusually suggestive temporal proximity between the grievance and the hiring decision recommendations as both were agenda items presented to the School Board at the same meeting. The failure to hire Putaro to a full-time teaching position was unquestionably an adverse employment action that would chill or deter a person of ordinary firmness from the exercise of his First Amendment rights. *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000). Indeed, the June 13, 2006 letter illustrates that Putaro was in fact deterred and therefore attempted to disavow his involvement in the grievance.

Finally, Defendants fall short of meeting their burden to establish that Putaro would not have been hired even if he had not engaged in the protected activity. Of course, if the jury believes Putaro's version of the meeting, Panza intimated that the protected activity (involvement in the grievance) would preclude Putaro from being hired. Even apart from that alleged

9

comment, the record demonstrates that prior to the grievance, Panza had heard great things about Putaro and expected him to be the next person hired, while after the grievance Panza ranked Putaro significantly lower than the other school officials who conducted the interview process. When Urso left the meeting, she was under the assumption that Putaro would be hired. Instead, the candidate who finished *sixth* in points was offered the position based on an alternative methodology (place ranking) suggested by Panza. A reasonable jury could readily conclude that the decision-making rationale articulated by Defendants was pretextual.[4]

Panza is not entitled to qualified immunity. The law has been clearly established for a lengthy period of time that school officials may not retaliate against the filing of a grievance and no reasonable person in Panza's position could believe that retaliating against Putaro by refusing to hire him was appropriate conduct. *See Pribula v. Wyoming Area School Dist.*, 2009 WL 427243 (M.D. Pa. February 20, 2009). The issue of punitive damages must be reserved for trial.

An appropriate Order follows.

McVerry, J.

---

[4] A reasonable jury could also conclude that the hiring process was entirely fair and even-handed, but at this stage of the proceeding, the Court must draw all reasonable inferences in favor of the non-moving party.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANTHONY N. PUTARO, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:07-cv-817 |
| | ) | |
| CARLYNTON SCHOOL DISTRICT, | ) | |
| MICHAEL PANZA, individually and as | ) | |
| Superintendent of the Carlynton School | ) | |
| District, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

In accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (*Document No. 22*) is **DENIED**.

Plaintiff shall file his pretrial statement on or before April 6, 2009.

Defendants shall file their pretrial statement on or before April 27, 2009.

A pretrial conference will be held on May 1, 2009 at 9:45 a.m.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Edward A. Olds, Esquire
 Email: edolds@earthlink.net

 Falco A. Muscante, Esquire
 Email: fam@mbm-law.net

 David S. Bloom, Esquire
 Email: dsb@mbm-law.net